IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL D. ELLIS,<br><br>Plaintiff,<br><br>vs.<br><br>C/Os GRAHM, MYERS, PAITLAN, BULLOCK, SGT. BROWN, and DOUGLAS COUNTY CORRECTIONAL CENTER,<br><br>Defendants. | **8:20CV140**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff, Michael Dean Ellis ("Ellis"), who currently is incarcerated at USP Leavenworth, filed his original Complaint (Filing 1) on April 13, 2020, while he was a prisoner at the Nebraska Diagnostic and Evaluation Center. Plaintiff subsequently was granted leave to proceed in forma pauperis. This matter is before the court for initial review of Plaintiff's Second Amended Complaint (Filing 27), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[1]

I. BACKGROUND

In a Memorandum and Order entered on September 3, 2020 (Filing 18), the court determined that Plaintiff's original Complaint failed to state a claim upon which relief may be granted because although Plaintiff's allegations suggested that

---

[1] The court is required to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C.A. § 1915A(a). On such initial review, the court must dismiss the complaint if it: "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A(b). *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring dismissal of in forma pauperis complaints "at any time" on the same grounds as § 1915A(b)).

corrections officers at the Douglas County Correctional Center (DCCC) had injured him by using excessive force on January 10, 2020, the officers were not sued in their individual capacities and no facts were alleged to demonstrate municipal liability. The court on its own motion gave Plaintiff leave to amend.

On October 8, 2020, Plaintiff filed an Amended Complaint (Filing 21) which clarified that he was a pretrial detainee at the time of the alleged incident, and provided additional facts about what transpired. However, the Amended Complaint still did not specify that Defendants were sued in their individual capacities, or allege that Plaintiff's constitutional rights were violated because of an official policy or custom at DCCC, or a failure to train or supervise. In a Memorandum and Order dated October 13, 2020, the court again gave Plaintiff leave to amend.[2] Plaintiff's Second Amended Complaint was timely filed on November 12, 2020.

## II. DISCUSSION

Liberally construing Plaintiff's Second Amended Complaint,[3] this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[2] Plaintiff was warned that the Second Amended Complaint would supersede, not supplement, his prior pleadings. (Filing 22 at 2, ¶ 3.) Accordingly, in conducting this initial review the court will not consider additional allegations that may be contained in the original Complaint or first Amended Complaint.

[3] "A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

2

The court first notes that Plaintiff has again listed DCCC as a Defendant in the caption to the pleading. This is improper because a county jail is not a distinct legal entity subject to suit. *See Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."); *Dan v. Douglas Cty. Dep't of Corr.*, No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("[T]he Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names."). Plaintiff does specify in the Second Amended Complaint that the other Defendants are sued in both their individual and official capacities. The official-capacity claims are, in effect, made against Douglas County. "A suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian*, 760 F.3d at 849 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

A. <u>Excessive Force Claims</u>

The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that "[d]ue process requires that a pretrial detainee not be punished." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). In other words, the Constitution shields pretrial detainees not just from "cruel and unusual punishments," U.S. Const.

3

amend. VIII, but from *any* punishment whatsoever. *Id.*; *see City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell*, 441 U.S. at 535 n. 16.

Excessive force claims of pretrial detainees are analyzed under an objective reasonableness standard. *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017). A court must assess the actions of each officer "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell*, 441 U.S. at 520). Factors relevant to assessing the objective reasonableness of force used by officers include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (quoting *Kingsley*, 135 S.Ct. at 2473). Even an officer in a non-supervisory position may be held liable for failing to protect an inmate from the use of excessive force by another officer, but it must be shown that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015) (quoting *Nance v. Sammis,* 586 F.3d 604, 612 (8th Cir. 2009)).

*1. Individual-Capacity Claims*

Giving Plaintiff the benefit of all reasonable inferences that can be drawn from the facts alleged in the Second Amended Complaint, *see Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (stating Rule 12(b)(6) standard of review), a plausible excessive force claim is stated against four DCCC corrections officers,

4

Defendants Grahm, Myers, Paitlan, and Bullock, and their immediate supervisor, Defendant Brown. Plaintiff alleges he was shoved to the ground while handcuffed, and then Officers Grahm and Myers "slammed and dropped" onto his lower back with their knees, Officer Grahm twisted Plaintiff's wrists "in ways they were not meant to bend," Officer Myers jammed a thumb in Plaintiff's throat so he "could not talk or swallow," and Officers Bullock and Paitlan twisted and pulled on Plaintiff's injured left ankle while attempting to remove a cast from his foot. Plaintiff denies offering any resistance and alleges the officers were laughing. Plaintiff also alleges Sgt. Brown watched the entire incident from a doorway and did not intervene.[4] Plaintiff claims he continues to have pain in his neck and back, and also claims his abdominal hernias have become enlarged as a result of the alleged abuse.

### 2. Official Capacity-Claims

Douglas County cannot be held liable for the officers' alleged misconduct under a theory of *respondeat superior* or vicarious liability. "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the [County] may be held liable under § 1983." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)

---

[4] The court does not find sufficient factual allegations to support a claim for supervisory liability against Sgt. Brown. "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir.) (citation omitted), *cert. denied*, 140 S. Ct. 553, 205 L. Ed. 2d 357 (2019). A supervisor may be held liable "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." *Perkins v. Hastings*, 915 F.3d 512, 524 (8th Cir. 2019) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)). The plaintiff must show that the supervisor "(1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to [the plaintiff]." *Id.* (quoting *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018). Although Plaintiff's Second Amended Complaint does not contain any facts to support a failure-to-train or failure-to-supervise claim against Sgt. Brown, she may be held liable for failing to protect him from harm when she allegedly witnessed the incident.

5

(O'Connor, J., dissenting)). To prevail on an official-capacity claim, Plaintiff must show that the alleged constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016).

"Official policy involves 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.'" *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018); *see also Brossart v. Janke*, 859 F.3d 616, 627-28 (8th Cir. 2017) ("A municipality may also be liable where its policies are lawful on their face but municipal action, such as failure to train or supervise, was taken with deliberate indifference as to its known or obvious consequences and led an employee to violate a plaintiff's rights.") (quotation marks and citations omitted), *cert. denied*, 138 S. Ct. 2025 (2018).

Plaintiff does not allege that the violation of his constitutional rights occurred because of a county policy or custom, or because of a failure to train or supervise corrections officers, nor does the Second Amended Complaint contain any facts from which it might reasonably be inferred that Douglas County is liable for his alleged injuries. Plaintiff merely asserts that DCCC should be held liable "for not training their C/O's to use better judgment and follow proper procedures." (Filing 27 at 5-6.) Indeed, Plaintiff alleges that to his knowledge, "DCCC does not train

6

their employees to abuse their power or humiliate and inmate." (Filing 27 at 2.) "At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

### B. Request for Counsel

Plaintiff's Second Amended Complaint contains a renewed request for appointment of counsel. The court has again given consideration to the factors discussed in *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), and concludes that appointment of counsel is not currently indicated.

### III. CONCLUSION

The court finds that Plaintiff's Second Amended Complaint states plausible claims for relief against the five individual Defendants, in their individual capacities only, for alleged violations of Plaintiff's right to be free from excessive force under the Fourteenth Amendment, but that claims alleged against these Defendants in their official capacities, or alleged against Douglas County Correctional Services, should be dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff's renewed request for appointment of counsel will be denied.

IT IS THEREFORE ORDERED:

1. For purposes of initial review only, the court finds Plaintiff has stated viable Fourteenth Amendment claims against the following five Defendants <u>in their individual capacities only</u>: (1) Corrections Officer Grahm; (2) Corrections Officer Myers; (3) Corrections Officer Paitlan; (4) Corrections Officer Bullock; and (5) Sergeant Brown.

2. All claims alleged against the aforesaid Defendants in their official capacities are dismissed without prejudice.

3.  Douglas County Correctional Center is dismissed as a party Defendant.

4.  Plaintiff's renewed request for appointment of counsel is denied without prejudice to reassertion.

5.  The Clerk of Court is directed to obtain from the Marshals Service the last known addresses for the five Defendants listed in paragraph 1 above for service of process on them in their individual capacities. Upon obtaining the necessary addresses, the Clerk of Court is directed to complete and issue summonses for Defendants in their individual capacities at the addresses provided by the Marshals Service. The Clerk of Court is further directed to deliver the summonses, the necessary USM-285 forms, and copies of the Second Amended Complaint (Filing 27) and this Memorandum and Order to the Marshals Service for service of process on Defendants. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).[5]

6.  The Clerk of Court is directed to file under seal any document containing the last known personal addresses for Defendants.

7.  The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

8.  Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9.  The clerk of court is directed to set the following pro se case management deadline: **May 3, 2021**: check for completion of service of process.

Dated this 2nd day of February, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge