IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL D. ELLIS,<br><br>Plaintiff,<br><br>vs.<br><br>GRAMHN, c/o; MYERS, BULLOCK, BROWN, SGt.; and EMPLOYEES OF DOUGLAS COUNTY CORRECTIONAL CENTER,<br><br>Defendants. | 8:20-CV-140<br><br>**MEMORANDUM AND ORDER** |

## I. INTRODUCTION

Michael D. Ellis, proceeding pro se, has sued five corrections officers at the Douglas County Department of Corrections (DCDC) in their individual capacities for violating his right to be free from excessive force under the Fourteenth Amendment. Filing 27 at 1–8; Filing 28 at 7 (screening order). Before the Court is Defendants' Motion for Summary Judgment. Filing 54. For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

## II. BACKGROUND[1]

On January 10, 2020, Ellis was placed into DCDC's custody. Filing 55-5 at 4. Prior to being booked at DCDC, Ellis received treatment at the University of Nebraska Medical Center for

---

[1] Ellis failed to file a brief opposing Defendants' Motion for Summary Judgment. Accordingly, Defendants' statement of facts is deemed admitted as true to the extent it is supported by the record. *See* NECivR 56.1(b)(1) ("Properly

injuring his ankle when he ran from the police. Filing 55-5 at 4. Ellis received an ace wrap, cam boot, and Tylenol. Filing 55-5 at 4.

The admissions and booking process at DCDC consists of six stages: security intake questions, a picture, fingerprints, clothing, medical intake screening, and classifications. Filing 55-3 at 1. At the clothing stage, inmates remove outside clothing and put on DCDC-issued clothes to prevent inmates from smuggling contraband into the facility. Filing 55-3 at 1. During the classifications stage, DCDC's Classifications Department determines where an inmate will be housed. Filing 55-3 at 1–2. In making this determination, the Classifications Department considers the medical intake screening that occurs when an inmate is booked. Filing 55-3 at 1–2. Medical staff employed by Wellpath, a DCDC contractor, perform the medical intake screening. Filing 55-3 at 1–2. Wellpath's medical staff determine whether an individual should be placed in medical housing or general population. Filing 55-3 at 1–2. A DCDC officer provides security to Wellpath's medical staff during the medical intake screening but does not participate in the process or listen to the inmate's private medical information. Filing 55-3 at 2.

Defendants Jordan Graham, Matthew Myers, Josh Bullock, Daniel Patlan,[2] and Cristy Brown[3] are corrections officers who were working at DCDC when Ellis arrived on January 10, 2020. Filing 55-1 at 1–2; Filing 55-2 at 1–2; Filing 55-3 at 1; Filing 55-4 at 1–2; Filing 55-8 at 1–

---

referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response."); *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032–33 (8th Cir. 2007) (upholding district court that deemed the movant's statement of facts admitted when the nonmovant failed to controvert it); *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir. 1986) ("Pro se litigants are not excused from compliance with substantive and procedural law . . . .").

[2] It appears that two of the defendants, Jeremy Myers and Virgil Patlan, were mistakenly served process. Both share last names with two of the defendants who interacted with Ellis on January 10, 2020. However, Jeremy Myers and Virgil Patlan have provided evidence that they were not at DCDC admissions when Ellis arrived at DCDC. Filing 55-6 at 1; Filing 55-9 at 2–3, 29, 43. Because Ellis has failed to demonstrate that a genuine dispute of material fact exists about whether he interacted with Jeremy Myers and Virgil Patlan on January 10, 2020, the Court grants them summary judgment and terminates them as parties to this case.

[3] In his Second Amended Complaint, Ellis appears to misspell the last names of Defendants Graham and Patlan, which is reflected in the case caption. Filing 27 at 1. Service was executed on Jordan Graham and Daniel Patlan. Filing 31; Filing 34. Therefore, despite the misspelling, Jordan Graham and Daniel Patlan are proper defendants in this case.

2. Graham and Bullock were assigned to work in admissions; Myers was assigned to work in admissions as a medical and security officer; Patlan was assigned to work as an escort officer in Housing Unit H; and Brown was stationed in Sergeant's Office 2B. Filing 55-1 at 1–2; Filing 55-2 at 1–2; Filing 55-3 at 1; Filing 55-4 at 1–2; Filing 55-8 at 1–2. When Ellis arrived at booking, Graham observed that Ellis appeared to be agitated and became verbally abusive towards DCDC staff. Filing 55-3 at 2. To help him calm down, DCDC staff[4] placed Ellis in a holding cell. Filing 55-3 at 2. Unfortunately, placing Ellis in the holding cell did not have the desired effect, and he began kicking the holding cell door and screaming at DCDC officers. Filing 55-3 at 5. Graham explained to Ellis that he would not be able to use the phone if he did not compose himself to no avail. Filing 55-3 at 5. At the time, Ellis was wearing socks and a medical boot that were not issued by DCDC. Filing 55-4 at 2.

Graham and Myers then escorted Ellis from the holding cell to a changing room so that he could change into DCDC clothing. Filing 55-3 at 2. After Ellis exited the changing room, Graham and Myers conducted a pat-down search of Ellis. Filing 55-3 at 2. During the pat-down search, Ellis continued to exhibit agitation and did not comply with orders to remain against the wall. Filing 55-3 at 2. While conducting the pat-down search, Myers attempted to remove Ellis's socks because they were not issued by DCDC. Filing 55-8 at 5. Ellis tried to kick back at Myers as Myers removed Ellis's socks. Filing 55-8 at 5. Because Ellis was acting erratically, and to control the situation, Myers and Graham decided to put Ellis into restraints. Filing 55-3 at 2; Filing 55-8 at 5.

At some point in time, Bullock joined Myers and Graham to escort Ellis to his cell.[5] Filing 55-3 at 2. Graham was told to place Ellis in general population at Housing Unit H. Filing 55-3 at

---

[4] Nothing in the record shows the name of the individual who put Ellis in the holding cell. *See* Filing 55-3 at 2.
[5] It is not clear from the record whether Bullock assisted Graham and Myers in the pat-down search or if Bullock arrived after the pat-down search. *Compare* Filing 55-3 at 2; *with* Filing 55-4 at 2.

3

2; Filing 55-4 at 2. Patlan and Brown went to the dayroom in Housing Unit H to clear the area for safety-purposes. Filing 55-2 at 2. Bullock, Myers, and Graham used an elevator to transport Ellis to Housing Unit H. Filing 55-4 at 2. When Ellis entered Housing Unit H, he was still wearing the non-DCDC-issued boot. Filing 55-2 at 2. Bullock, Myers, and Graham then walked Ellis to his cell so that they could remove his restraints. Filing 55-2 at 2; Filing 55-4 at 2. On the way to his cell, Ellis yelled that he had just come from the hospital and that he needed to go back. Filing 55-1 at 2, 5. Brown explained to Ellis that he was not at the hospital and that they needed to work together so that his restraints could be removed. Filing 55-1 at 2.

When Ellis entered his cell, Brown noticed that Ellis's cellmate's sleeping pad was on the floor. Filing 55-1 at 2. Brown ordered Bullock, Myers, and Graham to lay Ellis down on the mat in a prone position. Filing 55-1 at 2. Ellis followed the officers' commands and leaned forward while they guided him to the mat. Filing 55-1 at 2. Once Ellis was on the mat, one of the officers removed the hand restraints and ordered Ellis to put his hands on his head. Filing 55-3 at 3. At that point, Ellis began yelling that the officers were hurting his head, even though none of the officers were near his head. Filing 55-3 at 3. Ellis placed his right hand on his head and an officer removed his leg restraints and the non-DCDC-issued boot. Filing 55-3 at 3. As explained by Brown, officers removed Ellis's boot because DCDC's policy is to remove all outside articles of clothing, including medically-issued articles like boots, unless Wellpath provided prior clearance, to prevent contraband from entering the facility. Filing 55-1 at 2–3. Bullock, Myers, and Graham then exited Ellis's cell. Filing 55-1 at 3.

Defendants aver that, although Ellis was verbally abusive during the booking and assignments process, he never became physically combative. *E.g.*, Filing 55-8 at 2. Because Ellis was not physically combative, Defendants state that there was no reason to employ any use-of-

force techniques on Ellis. *E.g.*, 55-8 at 2. Defendants further attest that none of them had any knowledge of Ellis's health conditions, which allegedly include hernias, arthritis, and back problems. *E.g.*, Filing 55-2 at 2. Defendants aver—and video recordings of the incident confirm—that Ellis was able to walk under his own power. Filing 55-4 at 2; Filing 55-9 (video footage).

On April 13, 2020, Ellis filed suit against DCDC, Graham, Bullock, Patlan, Brown, Myers, and unknown DCDC correctional officers. Filing 1. Following two screening orders, Ellis filed a second amended complaint. Filing 27. In the Second Amended Complaint, Ellis states that Defendants forced him to limp up two flights of stairs while he wore a boot and a cast on his left ankle, assaulted him in his cell, and laughed at him. Filing 27 at 1–4. He further asserts that Brown failed to intervene during the incident. Filing 27 at 4. Since allegedly being assaulted by Defendants, Ellis claims to have neck pain, back pain, and enlarged abdominal hernias. Filing 27 at 4. For their part, Defendants deny all of Ellis's allegations. *E.g.*, Filing 55-1 at 3–4.

In his February 2, 2021 screening order, Senior Judge Richard G. Kopf determined that Ellis had stated a viable excessive-force claim under the Fourteenth Amendment against Graham, Bullock, Patlan, and Myers in their individual capacities and a failure-to-intervene claim against Brown in her individual capacity. Filing 28 4–5. On January 28, 2022, Defendants filed their Motion for Summary Judgment. Filing 28. Ellis failed to respond.

### III. ANALYSIS

#### A. Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is

5

designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v.*

*Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

### B. Defendants' Motion

Ellis brings an excessive-force claim against defendants Graham, Bullock, Myers, and Patlan. "The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from 'the use of excessive force that amounts to punishment.'" *Jackson v. Buckman*, 756 F.3d 1060, 1067 (8th Cir. 2014) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not," *Edwards v. Byrd*, 750 F.3d 728, 732 n.2 (8th Cir. 2014) (emphasis removed), Courts determine "whether the defendant's purpose in using force was 'to injure, punish or discipline' the detainee." *Jackson*, 756 F.3d at 1067 (quoting *Edwards*, 750 F.3d at 732). If the use of force is "an incident of some other legitimate governmental purpose," then it is not punishment "in the constitutional sense." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Grossly negligent conduct and a "de minimus quantum of force" is not actionable under the Due Process Clause. *Id.*

In their Motion for Summary Judgment, Defendants argue that none of their actions violated Ellis's right to be free from excessive force and that they are entitled to qualified immunity. Filing 56 at 9–22. Defendants further argue that the record shows that Brown had no duty to intervene, because no unlawful force was imposed on Ellis, and that she is also entitled to qualified immunity. Filing 56 at 22–23. Importantly, Ellis has failed to offer any evidence to rebut Defendants' account of what occurred at DCDC. *See Zubrod v. Hoch*, 907 F.3d 568, 577 (8th Cir. 2018) ("Though we view the facts in the light most favorable to the nonmoving party, the [plaintiffs] have not submitted competent, admissible evidence that rebuts the deputies' version of

7

events."). The Court concludes that the undisputed facts show that none of Defendants' actions violated Ellis's clearly established rights. Accordingly, the Court finds that Defendants are entitled to qualified immunity and grants them summary judgment on Ellis's excessive force and failure-to-intervene claims.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Its protection applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Courts engage in a two-step inquiry when a defendant asserts qualified immunity: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). Both questions must be answered affirmatively to defeat a defense of qualified immunity. *Id.* "And, courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" *Nord*, 757 F.3d at 738–39 (quoting *Pearson*, 555 U.S. at 236).

A right is clearly established if it is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "[T]he longstanding principle" is that "'clearly established law' should not be defined 'at a high level of generality.'" *Morgan*, 920 F.3d at 523 (quoting *White v. Pauly*,

8

137 S. Ct. 548, 552 (2017)). Rather, "[T]he clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Mullenix*, 577 U.S. at 12 ("The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" (quoting *Ashcroft*, 563 U.S. at 742)). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Morgan*, 920 F.3d at 524 (quoting *Ashcroft*, 563 U.S. at 741). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (internal quotation marks omitted)). The plaintiff has the burden of showing that the law is clearly established. *Id.*

The Court begins with the officers who escorted Ellis from admissions to his cell in Housing Unit H: Graham, Bullock, and Myers. Based on the uncontroverted record, the escorting officers placed Ellis in a holding cell because he was being belligerent; put restraints on him to ensure that they could maintain control as they escorted him to his cell; performed a pat down search; laid him on his stomach; and removed his socks and a medical boot. Ellis walked under his own power, and besides statements about wanting to go to the hospital and that the escorting officers were hurting his head,[6] he never expressed being in severe pain. A reasonable officer would not understand that these minimally invasive actions, occurring during a booking and admissions process at a correctional facility, constituted excessive force. *See Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) ("In order to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635,

---

[6] While Ellis exclaimed that the officers were hurting his head at one point during the incident, the record shows that, at the time he made this statement, no officer was near his head. Filing 55-3 at 3; *see Torgerson*, 643 F.3d at 1042 ("The nonmovant . . . must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

9

640 (1987))); *see also Graham*, 490 U.S. at 397 (holding that the issue in excessive force cases is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them"). A review of the relevant caselaw shows that under these circumstances—in which the escorting officers were dealing with an agitated inmate and needed to remove non-approved articles of clothing from his person—the escorting officers did not violate any clearly established rights. *See Ryan v. Armstrong*, 850 F.3d 419, 428 (8th Cir. 2017) (holding that officers who entered a cell to bring a detainee who was behaving erratically to be medically assessed were entitled to qualified immunity when the officers placed their body weight on the detainee and tased him while he resisted and bit one of the officers); *see also Bell*, 441 U.S. at 540 ("[T]he Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment . . . .").

Patlan is also entitled to qualified immunity against Ellis's excessive force claim. The undisputed facts show that Patlan never touched Ellis. Patlan's only involvement in the incident was clearing the day room of Housing Unit H so that Ellis could be escorted to his cell safely. Such behavior does not violate Ellis's clearly established rights. *See Porter v. Williams*, No. 4:17-CV-2565-JAR, 2019 WL 4345958, at *4 (E.D. Mo. Sept. 11, 2019) (finding, in an excessive force case, that the defendant officer was entitled to qualified immunity while noting that she "never touched" the plaintiff).

Finally, the Court addresses Ellis's failure-to-intervene claim against Brown. Ellis's failure-to-intervene claim requires him to show that "(1) [Brown] observed or had reason to know that excessive force would be or was being used, and (2) [Brown] had both the opportunity and

the means to prevent the harm from occurring." *Mitchell v. Kirchmeier*, 28 F.4th 888 (8th Cir. 2022) (quoting *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015)). Here, no reasonable officer would understand that Brown's actions violated Ellis's clearly established rights. The record shows that Brown helped clear the day room in Housing Unit H so that Ellis could be escorted to his cell safely; directed officers to lay Ellis on his stomach so that his restraints could be removed; and watched as officers removed Ellis's restraints and his non-DCDC-issued boot. Brown states that she did not see any conduct on behalf of the officers she supervised that would have constituted an unlawful use of force. Nothing Brown did appears "plainly incompetent" or shows she "knowingly violated the law." *Stanton*, 571 U.S. at 6. Accordingly, she is entitled to qualified immunity on Ellis's failure-to-intervene claim.

## IV. CONCLUSION

The undisputed facts show that Defendants are entitled to qualified immunity. Accordingly,

IT IS ORDERED:

1. Defendants' Motion for Summary Judgment, Filing 54, is granted;

2. Ellis's Second Amended Complaint, Filing 27, is dismissed; and

3. The Court will enter a separate judgment.

Dated this 20th day of April, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge